Isaac D. MINTON, Administrator of Estate of Minor, Connie Minton, et al., Plaintiffs-Appellants,

v.

ST. BERNARD PARISH SCHOOL BOARD, et al., Defendants-Appellees.

No. 85–3688.

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1986.

Wm. P. Schuler, Asst. Dist. Atty., Chalmette, La., Eavelyn T. Brooks, Lisa F. Keegan, Asst. Attys. Gen., Dept. of Justice, New Orleans, La., for plaintiffs-appellants.

Before BROWN, RUBIN, and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A Mississippi resident in whose favor a final tort judgment has been rendered by a Louisiana court against a Louisiana parish school district has been unable to collect her damages because the parish school board refuses to appropriate the funds necessary to satisfy her claim. Alleging that the School Board and its individual members are depriving her of equal protection of the law because they pay all judgments in favor of residents of the Parish and—as she elaborates upon her charges in her brief—in favor of Louisiana residents but do not pay her because she is a nonresident of either the Parish or the State, she and the administrator of her estate filed suit in federal court seeking declaratory and monetary relief under 42 U.S.C. § 1983. The District Court for the Eastern District of Louisiana dismissed appellants' action for failure to state a claim for which relief can be granted. Assessing her charge of discrimination on its face, as we must, we find that it is sufficient to state a claim for denial of that equality with residents that state agencies must accord nonresidents. Even discretion may not be exercised on a discriminatory basis.

I.

In 1974, Connie Minton, a resident of Mississippi and a minor, was struck and injured by a school bus operated under the supervision of the St. Bernard Parish School Board. Shortly thereafter, she and the administrator of her estate, Isaac D. Minton, brought an action to recover for her injuries in a Louisiana state court, and obtained judgment in her favor. On appeal, the judgment was affirmed although

Walter F. Gemeinhardt, New Orleans, La., for defendants-appellees.

the amount of damages was reduced.[1] That judgment is now final.

Since then Minton and her administrator have tried unsuccessfully to obtain from the Saint Bernard Parish School Board an appropriation of funds to satisfy the judgment. The Board has articulated no reasons for its refusal other than its assertion that the judgment is unjust and that it is immune from suits requiring it to make such appropriations. State law forbids payment of a judgment against a state agency or political subdivision of the state without such an appropriation.[2]

The plaintiffs allege in this § 1983 action that the School Board and its individual members are depriving Connie Minton of her property without due process of the law and, by refusing to pay judgments in favor of nonresidents of St. Bernard Parish while satisfying claims raised by residents of the parish, are denying her equal protection of the law as guaranteed by the fourteenth amendment. In their prayer for relief, the Mintons asked the district court for damages, including the unpaid portion of the judgment plus interest, attorney's fees, punitive damages, and any equitable relief the court deems appropriate.

## II.

The Saint Bernard Parish School Board relies first on the defense that the Mintons' suit constitutes a suit against the state that is prohibited by the eleventh amendment to the United States Constitution. We must therefore determine whether the Saint Bernard Parish School Board is an arm of the state enjoying eleventh amendment immunity or whether it possesses an identity sufficiently distinct from that of the State of Louisiana to place it beyond that shield.

█ As Judge Garwood has recently stated in *Clark v. Tarrant County, Texas*,[3] to draw that distinction "we 'must examine the particular entity in question and its powers and characteristics as created by state law ....' " [4] The relevant factors include: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.[5]

█ These tests identify parish school boards as local independent agents not shielded by the state's eleventh amendment immunity. Although Louisiana courts have referred to school boards as "agencies" of the state,[6] this characterization does not amount to an assertion that the boards are arms of the state within the meaning of the eleventh amendment. School boards generate funds for the operation of parish school districts through local ad valorem taxation,[7] exercise a great deal of discretion in performing their functions and addressing their innately local

1. *Minton v. Saint Bernard Parish School Board*, 416 So.2d 167 (La.App.1982).

2. La.Rev.Stat. 13:5109 states, in pertinent part: Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision ... shall be exigible, payable, and paid only out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision if the suit was filed against a political subdivision.

3. 798 F.2d 736, 748 (5th Cir.1986). *See also Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–88 (5th Cir.1986).

4. *Clark*, at 744 *quoting Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir.1982).

5. *Id.* at 743–45.

6. *See, e.g., Stephens v. Natchitoches Parish School Board*, 96 So.2d 396, 398 (La.App. 1957); *Shaw v. Caddo Parish School Board*, 347 So.2d 39, 41 (La.App.), *writ denied*, 350 So.2d 676 (La.1977).

7. La. Const. art. 8, § 13.

concerns,[8] have authority to sue or be sued in their own name,[9] and can hold, use, or sell property as each local board determines necessary to fulfill its obligation to the public.[10] In view of the inherently local nature of the interests of Louisiana school boards, the wide degree of local autonomy they are granted under state law, and the predominately local source of their funding, it cannot be said either that these entities are mere arms of the state or that monetary judgments against them would represent indirect impositions on the state treasury interfering with the state's fiscal autonomy.[11] Louisiana school boards, therefore, are not entitled to eleventh amendment immunity to Section 1983 claims.

■ In a separate brief the state argues that this court should abstain even if we have jurisdiction because the issue is a matter of serious state concern with "potentially far-reaching impact on the public fisc and on state regulation of public property." The argument has no foundation in Louisiana law. For the reasons we have given, a suit against a parish school board is not a suit against the state and poses no immediate threat to the state fisc or state regulation of public property. What relief, if any, the Mintons may obtain from the School Board and what relief is barred by the eleventh amendment are separate questions that do not require abstention.

### III.

■ The Board's failure to pay the Mintons' judgment is not a denial of due process. The Supreme Court determined long ago in *Louisiana ex rel. Folsom v. Mayor of New Orleans* [12] that the property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity.[13]

In an effort to avoid the impact of *Folsom,* the Mintons refer to *Evans v. City of Chicago,*[14] a more recent case in which the Seventh Circuit held that a city's practice of delaying payment of judgments of over $1,000 constituted a deprivation of property under the fourteenth amendment due process clause.[15] The court in *Evans,* however, distinguished *Folsom* because Illinois law creates a specific property right in a judgment entitling a judgment creditor to immediate payment if the judgment is not satisfied within the fiscal year following the year in which the judgment was rendered and the debtor city fails to invoke prescribed procedures for delaying payment.[16] Because no such right to immediate payment is created by Louisiana law, the principle set forth in *Folsom* continues to control this case and the School Board's failure to appropriate funds to pay the debt to the Mintons does not constitute a taking in violation of the due process clause.

### IV.

■ The constitutional right to equal protection, however, is not predicated upon the existence of a property right. Due process safeguards only against the deprivation of life, liberty, or property, but every person is entitled to equal protection, even with regard to interests that do not constitute life, liberty, or property in the constitutional sense. If the Mintons can prove their allegation that the School

8. La.Rev.Stat.Ann. § 17:81 (West 1986 Supp.).

9. La.Rev.Stat.Ann. §§ 17:51 & 17:81 (West 1982 & 1986 Supp.).

10. La.Rev.Stat.Ann. §§ 17:81(G) & (H) (West 1986 Supp.).

11. *See Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 560 (5th Cir.1982); La.Rev.Stat.Ann. § 13:5108.2, subd. A(2) (West 1986 Supp.).

12. 109 U.S. 285, 3 S.Ct. 211, 27 L.Ed. 936 (1883).

13. 109 U.S. at 290, 3 S.Ct. at 214.

14. 689 F.2d 1286 (7th Cir.1982).

15. 689 F.2d at 1297.

16. *Id.*

Board illegally discriminates between residents and nonresidents of St. Bernard Parish, as they say in their complaint, or between residents of Louisiana and nonresidents, as they state in their brief, in determining whether to satisfy tort judgments, they are entitled at least to declaratory relief.

This is not a situation in which a local or state government is patently justified in providing greater or more immediate benefits for its citizens than for noncitizens, and the School Board has offered no specific rationale for making such distinctions if, in fact, such distinctions are made. The state's reliance on *Starns v. Malkerson*,[17] therefore, is misplaced. In *Starns*, new residents of Minnesota challenged the state's policy of charging new or out-of-state residents higher tuition for enrollment in state colleges than it charges residents who have lived in the state for over one year. The state justified its policy as a rational attempt "to achieve partial cost equalization between those who have and those who have not recently contributed to the state's economy through employment, tax payments and expenditures therein."[18] As a condition precedent to allowing a person to reap the fullest benefit of a program not providing basic necessities of life, it is reasonable for a state to favor those who have previously contributed to the program's maintenance. The nonresident victim of a tort injury for which a government entity is responsible, however, generally would not be situated differently from his resident counterpart. Both the nonresident and the resident personal injury victim suffer disproportionately as a result of the government's activities, and each would normally possess an equal interest in being made whole.

## V.

### A.

■ Finally, the School Board asserts that the failure of its members to appropriate funds requested by the Mintons is a legislative action absolutely immune from federal court inquiry. The argument appears to rely on the contention that the individual members of the School Board are immune from liability for actions taken by them in a legislative capacity, an issue entirely distinct from whether the School Board as a legal entity is itself immune. Qualified official immunity and absolute legislative immunity are doctrines that protect individuals acting within the bounds of their official duties, not the governing bodies on which they serve.[19] Thus, even if the actions of the School Board members are legislative, rather than administrative, the School Board itself as a separate entity is not entitled to immunity for violation of the Mintons' constitutional rights.

### B.

Whether the Board members' legislative immunity requires the complaint to be dismissed insofar as it seeks relief from them is a more complicated question. In *Tenney v. Brandhove*[20] the Supreme Court held that state legislators who are acting within the scope of their legislative duty are, like their federal counterparts, absolutely immune to civil suits for damages, "not for their private indulgence but for the public good."[21] This absolute immunity from suit under § 1983 was extended to regional legislators in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*[22] and

---

**17.** 326 F.Supp. 234 (D.Minn.1970), *aff'd*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

**18.** 326 F.Supp. at 240.

**19.** *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d

611 (1978); *Kingsville Independent School District v. Cooper*, 611 F.2d 1109 (5th Cir.1980).

**20.** 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

**21.** 341 U.S. at 377, 71 S.Ct. at 788.

**22.** 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

to local legislators in *Hernandez v. City of Lafayette.*[23] Thus, when acting in their legislative capacity, local legislators are granted even greater protection than the qualified immunity generally granted school officials for actions taken in "good faith fulfillment of their responsibilities and within the bounds of reason ...."[24] If the School Board members are entitled to absolute immunity from the charges made by the Mintons, they are entitled not only to avoid "the consequences of litigation's results but also ... the burden of defending themselves."[25]

■ As the Supreme Court noted in *Scheuer v. Rhodes,*[26] official immunity "apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good." Because, however, official immunity doctrines are premised upon the concern that the threat of personal liability may deter government officials from executing their offices with the decisiveness and good faith judgment required for the public good, the immunity does not protect officials when they are not threatened with personal lia-

bility. It does not, therefore, bar injunctive relief[27] or suits in which officials are sued only in their official capacities and, therefore, cannot be held personally liable.[28]

■ The complaint, which is somewhat less than artful, does not state whether the named school board members are being sued in their individual or official capacity or both. Upon remand, the district court shall require the Mintons to amend their complaint or otherwise to make clear its nature. If it thereafter appears that the individual Board members are named defendants only in their official capacities, neither qualified nor absolute immunity would apply since the individual Board members would not be threatened by personal liability. On the other hand, if the Board members are sued in their personal capacities, they are entitled to plead legislative immunity and on this basis may be entitled to judgment on the claims against them, a matter not addressed by the trial court.

■ Local legislators who are acting within the scope of their legislative duty, enjoy absolute immunity from personal liability under civil liability suits.[29] Legislative absolute immunity, however, is actually only an extension of the qualified immunity granted other government officials, its objective being the implementation of additional safeguards that fulfill the mandate of the Speech or Debate Clause[30] of the

**23.** 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

**24.** *Wood v. Strickland,* 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975).

**25.** *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967).

**26.** 416 U.S. 232, 239–40, 94 S.Ct. 1683, 1688, 40 L.Ed.2d 90 (1974).

**27.** *Rodriguez v. Brd. of Ed. of Eastchester Union Free Sch. Dist.,* 620 F.2d 362, 366 (2d Cir. 1980); *Rowley v. McMillan,* 502 F.2d 1326, 1332 (4th Cir.1974); *Kucinich v. Forbes,* 432 F.Supp. 1101, 1108 n. 8 (N.D.Oh.

1977); *Schreiber v. Joint School Dist. No. 1,* 335 F.Supp. 745, 747 (E.D.Wis.1972).

**28.** *Littlejohn v. Rose,* 768 F.2d 765, 772 (6th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1260, 89 L.Ed.2d 590 (1986); *LaSalle Na. Bank v. County of Lake,* 579 F.Supp. 8 (N.D. Ill.1984). *See also Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55; *Hughes v. Blankenship,* 672 F.2d 403 (4th Cir.1982); *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980).

**29.** *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982).

**30.** U.S. Const. art. I, § 6.

Constitution.[31] Its protection, therefore, applies not only to legislators but to any other officials fulfilling legislative functions including the President when exercising his authority to approve bills,[32] justices of a state supreme court exercising legislative functions,[33] and a city mayor vetoing a city ordinance.[34] But even for legislators, the absolute immunity doctrine does not provide blanket protection from burdensome litigation. Not "everything a Member of Congress may regularly do is ... a legislative act within the protection of the Speech or Debate Clause."[35] It follows that not everything an official with legislative duties does is protected by absolute immunity.[36] When an official possessing legislative responsibilities engages in official activities insufficiently connected with the legislative process to raise genuine concern that an inquiry into the motives underlying his actions will thwart his ability to perform his legislative duties vigorously, openly and forthrightly, he is not entitled to absolute immunity but only to the qualified immunity grounded in good faith that is bestowed upon other government officials.[37] Although the School Board addressed this issue in cursory form in its

brief, it would be inappropriate at this time for this court to attempt to resolve the issue. If absolute immunity is urged by the School Board members in the district court, that court must determine whether, under the statutory scheme in Louisiana, school board members' decisions whether to appropriate funds to pay a particular tort judgment involve the degree of discretion and public-policy-making traditionally associated with legislative functions or merely an administrative application of existing policies.[38]

The prayer of the Mintons' complaint, which is set forth in full in the footnote,[39] seeks various types of relief. Whether, if they prove the facts on which their equal protection claim rests, they are entitled only to declaratory or to additional relief is an issue that has not been addressed by the district court or adequately briefed before us. We, therefore do not attempt to resolve that question. We conclude only that the Mintons have stated a claim for denial of equal protection for which some form of relief may be granted and that such claim is not barred by the eleventh amendment, abstention doctrines, or—with regard to at least the School Board—by legislative im-

**31.** *Tenney v. Brandhove,* 341 U.S. at 372–74, 71 S.Ct. at 786–87.

**32.** *Edwards v. United States,* 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239 (1932).

**33.** *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

**34.** *Hernandez,* 643 F.2d 1188.

**35.** *Doe v. McMillan,* 412 U.S. 306, 313, 93 S.Ct. 2018, 2025, 36 L.Ed.2d 912 (1973).

**36.** *Id.,* 412 U.S. at 324, 93 S.Ct. at 2030.

**37.** *Davis v. Passman,* 544 F.2d 865, 877–82 (5th Cir.1977), *rev'd en banc on diff. grds,* 571 F.2d 793 (1978), *rev'd and remanded,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

**38.** *See, e.g., Hornsby v. Allen,* 326 F.2d 605, 608–09 (5th Cir.1964); *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928, 943 (9th Cir. 1977); *Kinderhill Farm Breeding Associates v. Appel,* 450 F.Supp. 134 (S.D.N.Y.1978); *Adler v. Lynch,* 415 F.Supp. 705 (D.Neb.1976).

**39.** WHEREFORE, The Complainant, Isaac D. Minton, Administrator of minor, Connie Minton, and Connie Minton, respectfully sprays (sic) that this Court grant the following relief:

1. That a judgment for damages in the amount of $1,269,356.34 be entered against all named defendants jointly, severally, and in solido and for legal interest from the date of judicial demand and all costs for these proceedings;
2. That this Court grant counsel for Complainant reasonable attorney's fees as part of the costs;
3. This Court grant an award for punitive damages against all named defendants;
4. Plaintiff requests a trial by jury[;]
5. This court grant such other general equitable relief as it may deem proper, particularly declaring part of the Statute, Article XII. Sec. 10(c) unconstitutional, as it relates to the prohibition of Plaintiffs from executing the judgment, "No judgment shall be exigible."

**136**

munity. Insofar as the complaint seeks to state a claim for denial of due process, the dismissal of that claim is AFFIRMED. The district court's order dismissing the remainder of the complaint is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.