Matthew **FEARY**, Plaintiff,

v.

**REGIONAL TRANSIT AUTHORITY**, Defendant.

Civ. A. No. 88–0152.

United States District Court,
E.D. Louisiana.

May 18, 1988.

Mitchell Landrieu, Martzell, Thomas & Bickford, New Orleans, La., for plaintiff.

Nat G. Kiefer Jr., New Orleans, La., for defendant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court on May 18, 1988 for hearing on defendant's motion to dismiss for lack of subject matter jurisdiction. Neither counsel appeared at the hearing, and the Court took the motion under submission. For the following reasons, the Court now DENIES the motion.

This is a diversity personal injury case. Plaintiff, a New Zealand citizen, was allegedly hit by a streetcar owned and operated by the Regional Transit Authority ("RTA") and now sues the RTA for money damages. The RTA raises the defense of Eleventh Amendment immunity. Because the RTA is not an arm of the State of Louisiana for immunity purposes, its defense must fail.

Defendant's position, that plaintiff's suit can only be brought in state court, is curious indeed. It implies an underlying premise that the outcome of the suit will differ depending on whether the suit is litigated in state or federal court. In theory at least, this should not happen. The Court, however, is not asked to resolve this puzzle; instead, its task is a simpler one.

### I.

The state immunity issue is a most complex, developed one. Only the state government and "arms of the state" qualify for Eleventh Amendment[1] immunity; the Amendment ordinarily does not apply to municipal corporations and other political subdivisions of the state.[2] To state the obvious, not every government entity created by a state is immune under the Eleventh Amendment.[3]

The Fifth Circuit has enunciated a set of six factors for distinguishing these two types of political entities:

The relevant factors include: (1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to state-wide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.[4]

All the factors remain questions of state

1. The Eleventh Amendment of the U.S. Constitution reads as follows:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced, or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

2. *Lewis v. Midwestern State University,* 837 F.2d 197, 198 (5th Cir.1988) (citing *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); *see Jacintoport Corp. v. Greater Baton Rouge Port Commission,* 762 F.2d 435, 438 (5th Cir.1985) (independent local entities are not entitled to immunity "even though they exercise a 'slice of state power'" (quoting *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d

401 (1979))), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).

3. *See, e.g., McDonald v. Board of Mississippi Levee Commissioners,* 832 F.2d 901, 906 (5th Cir.1987) (Levee Board mandated by Mississippi constitution held not immune); *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 131–32 (5th Cir.1986) (Louisiana school boards held not immune); *Jacintoport,* 762 F.2d at 438–40 (Greater Baton Rouge Port Commission, though a state agency created by state statute, held not immune); *cf.* cases cited *infra* note 21 (municipalities and parishes not immune).

4. *Minton,* 803 F.2d at 131 (citing *Clark v. Tarrant County,* 798 F.2d 736, 744–45 (5th Cir. 1986)).

law.[5] Because of the important goal in protecting state treasuries, the most significant factor (at least of the last five factors) is whether a judgment against the entity will be paid with state funds.[6] Concerning the local/statewide factor, "[a]ny governmental entity created by a state presumably exists because the state citizenry perceived a need for it, but this element of state interest, without more, does not transform every state agency into one with a statewide concern." [7] And "[a] reference to the [entity in question] as an 'agency' of the state by [state] courts does not amount to a characterization of the [entity] as an arm of the state." [8]

The Fifth Circuit has characterized the first factor both as one of overarching importance [9] and as one that "subsumes all other factors." [10] This characterization suggests a *sine qua non* status: if state courts consider the entity to be a state agency (or have not resolved this issue), then a court must look to the remaining factors to determine if immunity is available; if state courts consider the entity separate from the state, then there is little to no chance that immunity is available.[11]

## II.

The Court now considers these various factors as they relate to the RTA. Central is Louisiana's Regional Transit Authority Act of 1979 as amended ("the RTA Act"), which governs the RTA.[12]

The RTA argues that it is immune because it is a political subdivision of the State of Louisiana.[13] This argument misses the mark; the critical question is whether this political subdivision is "merely the alter ego of the State (thus the State is the real party in interest) or an independent agency (thus the agency is a 'citizen' for purposes of diversity jurisdiction)." [14]

■ First, Louisiana law on this first factor provides little guidance. Both parties agree that the RTA is a political subdivision created by statute by the Louisiana Legislature. The sole Louisiana state court case this Court has found to discuss the RTA's status is *Turner v. Regional Transit Authority.*[15] There, the Louisiana Court of Appeal for the Fourth Circuit stated that the RTA was a political subdivision of the State and therefore enjoyed the benefits of La. Revised Statute § 13:5105, which prohibit jury trials when "the state or a state agency or political subdivision" is sued.[16] It does not follow from this case, however, that state courts consider the RTA as an arm of the state. For the Louisiana Supreme Court has held that the same statute, § 13:5105, also applies

---

**5.** *Louisiana Land & Exploration Co. v. State Mineral Board,* 229 F.2d 5, 7 (5th Cir.), *cert. denied,* 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485 (1956); *see Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982).

**6.** *McDonald,* 832 F.2d at 907 (citing *Jacintoport,* 762 F.2d at 440–41).

**7.** *Id.* at 908.

**8.** *Id.* at 907 (citing *Minton,* 803 F.2d at 131); *see Jacintoport,* 762 F.2d at 439.

**9.** *See Jacintoport,* 762 F.2d at 439.

**10.** *Id.* at 438 (quoting *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.,* 625 F.2d 22, 25 (5th Cir.1980) (citing *C.H. Leavell & Co. v. Board of Commissioners of the Port of New Orleans,* 424 F.2d 764, 766–67 (5th Cir.1970))).

**11.** *See C.H. Leavell,* 424 F.2d at 766–67 (holding no immunity to the Dock Board and noting that Louisiana courts considered it separate from the state).

**12.** *See* La.Rev.Stat.Ann. §§ 48:1651–1667 (West 1984 & Supp.1988).

**13.** *See id.* § 1654(A) (the RTA "shall be a body politic and corporate and a political subdivision of the state of Louisiana"); *Turner v. Regional Transit Authority,* 498 So.2d 777, 779 (La.App. 4th Cir.1986).

**14.** *Kurkiewicz v. State of Louisiana, Department of Health and Human Resources,* 560 F.Supp. 911, 912 (M.D.La.1983) (citing *Department of Health & Rehabilitative Services v. Davis,* 616 F.2d 828 (5th Cir.1980)).

**15.** 498 So.2d 777 (La.App. 4th Cir.1986).

**16.** *Id.* at 779. The court found that the trial court had thus erred in conducting a jury trial but held that the RTA had waived its right to a bench trial by not timely objecting to the jury. *Id.*

to suits against municipalities.[17] But Louisiana state courts do not consider municipalities to be arms of the state.[18] The Court is aware of the broad test of the Louisiana Supreme Court for determining whether an *office* is a state office or instead a local office: "If the office is created by the legislature ..., it is a state office ...."[19] But it is important to emphasize that the factors the Louisiana Supreme Court lists for resolving its issue differ from, and to some extent conflict with, the Fifth Circuit's factors for Eleventh Amendment immunity; the state law issue gives no consideration to the source of funds for the office, and finds irrelevant any distinction between local and statewide problems/effects.[20] Further, this state law rule should not be read too literally, for parishes and municipalities, which it is well established do not enjoy Eleventh Amendment immunity,[21] are created and governed by state statute,[22] just as "state offices" are. To repeat, it does necessarily follow that an office created by Louisiana statute is immune under the Eleventh Amendment;[23] to hold otherwise would render the Fifth Circuit's list of factors practically meaningless, for in almost every instance where immunity is at issue, the entity in question was created by state statute.[24]

Second, the RTA's funds are independent of the state's. The RTA Act directs the RTA board to "fix such fares, rates, rentals, and charges in such amounts ... to provide funds for the payment of the interest on and principal of all bonds, certificates, and other obligations ..."[25] and expressly gives the RTA board authority to issue revenue bonds in its name.[26] Under the Act, the RTA has power to impose taxes for its own transit-related uses.[27] Nowhere does the Act provide for any funding from the state, nor does the Act provide that any monies from the RTA will go to the state. In sum, the RTA enjoys fiscal autonomy from the state,[28] and the funds generated by the RTA are paid to it and not the state treasury. Thus, any judgment plaintiff may win will be paid by

---

**17.** *See Rudolph v. Massachusetts Bay Insurance Co.*, 472 So.2d 901 (La.1985) (holding that jury demand should be struck for third-party claims against the City of Plaquemines and holding that the statute did not violate either the Seventh Amendment or the due process clause or equal protection clause of the Fourteenth Amendment of the U.S. Constitution).

**18.** *Cf. Mullins v. State*, 387 So.2d 1151 (La.1980) (distinguishing state offices from municipal offices).

**19.** *Id.* at 1152 (quoting *State v. Taylor*, 44 La. Ann. 783, 784, 11 So. 132, 133 (1892)), *cited in Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir.1986).

**20.** *See Mullins*, 387 So.2d at 1153.

**21.** *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978); *see United States v. St. Bernard Parish*, 756 F.2d 1116, 1126 (5th Cir.1985) (same for parishes) (citing *County of Lincoln v. Luning*, 133 U.S. 529, 529, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1889) (same for counties)), *cert. denied*, 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986); *see also Edelman v. Jordan*, 415 U.S. 651, 667 n. 12, 94 S.Ct. 1347, 1358 n. 12, 39 L.Ed.2d 662 (1974).

**22.** *Kel–Kan Investment Corp. v. Village of Greenwood*, 428 So.2d 401, 405 (La.1983); *see Creekmore v. Public Belt Railroad Commission of New Orleans*, 134 F.2d 576, 577 (5th Cir.), *cert. denied*, 320 U.S. 742, 64 S.Ct. 43, 88 L.Ed. 440 (1943). *See generally* La. Const. art. 6 (1974); La.Rev.Stat. tit. 33.

**23.** *See supra* text accompanying note 3.

**24.** Every single Fifth Circuit case cited in the footnotes above concerns an entity created by state statute or constitution.

**25.** La.Rev.Stat. § 48:1657(A).

**26.** *Id.* § 1658. The RTA Act also gives the RTA the "power to borrow money from private lenders ... and, in connection therewith to issue negotiable notes, bonds, refunding bonds, and other evidences of indebtedness or obligations of authority," *id.* § 1656(12), the "power to ... collect fares, rates, rentals, and other charges," *id.* § 1656(13), and the "power ... levy and collect charges, tolls, fees, head taxes, or use taxes, or all of the preceding," *id.* § 1656(15).

**27.** *Id.* § 1664.

**28.** *See Minton*, 803 F.2d at 132 (citing *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 560–61 (5th Cir.1982)).

the RTA itself.[29]

Third, the RTA enjoys substantial local autonomy. The RTA is not obligated to report to the state legislature or the governor; its only requirements of meeting with other government bodies are with the local governing bodies.[30] Further, the board determines "by itself exclusively" the scope and standards of its services [31] and exercises a great deal of discretion in performing its functions and addressing its innately local concerns.[32] In addition, all but two members of the RTA's board of commissioners must be domiciled within the RTA's regional area and are appointed by local parish officials.[33]

Fourth, the RTA is concerned with local, as opposed to statewide, matters. The RTA covers only the greater New Orleans metropolitan area.[34] Further, the RTA's taxing power is limited to its regional area.[35] In addition, the state legislature has set up three other transit authorities covering other portions of the state.[36]

Fifth, the RTA Act specifically states that the RTA "may sue and be sued in its corporate name." [37] The RTA has been sued in its own name in at least two other federal cases [38] and in at least three state court cases.[39]

Finally, the RTA Act authorizes the RTA to hold and use property, including streetcars such as the one that allegedly injured plaintiff. The Act states: "The purpose for which the [RTA] is created is to ... lease as lessee, purchase, acquire, hold, [and] own ... a transit system." [40] The Act defines a "transit system" to mean "all property, real or personal, used in the public ground transportation ... including but not limited to ... streetcars." [41] Among the RTA's authorized powers is the "power to acquire by lease as lessee, grant, gift, exchange, purchase or otherwise own, and use any franchise, servitude, real or per-

---

29. *See McDonald,* 832 F.2d at 907.

30. *E.g.,* La.Rev.Stat. §§ 48:1657(D), 1665.

31. *Id.* § 1657(C).

32. *See id.* §§ 1652, 1656–1659.

33. *See id.* § 1655(A). Two board members are appointed by the governor. *Id.* But this is hardly material, for all the board members of the Greater Baton Rouge Port Commission, held not to be immune in *Jacintoport,* are appointed by the governor and subject to confirmation by the State Senate. *See* La.Rev.Stat.Ann. § 34:1221(A), (C) (West 1985).

34. *See* La.Rev.Stat. § 48:1653(1) ("the Regional Transit Authority ... shall be composed of the parishes of Orleans, Jefferson, St. Tammany, St. Bernard, and such other adjacent parishes as may elect to participate"); *see also id.* § 1654(A).

35. *See id.* § 1664; *cf. id.* § 1666 ("the proceeds from any such statewide tax [imposed by the legislature] will be prorated to all parishes in the state on a population formula for use by said parishes for transit or transportation purposes, or both"); *accord id.* §§ 1515 (same for Terrebonne Parish Mass Transit Authority), 1616 (same for River Parishes Transit Authority).

36. *See* Terrebonne Parish Mass Transit Authority Act of 1975, *id.* §§ 1501–1515; River Parishes Transit Authority Act of 1976, *id.* §§ 1601–1616; and the St. Mary Parish Mass Transit Authority Act, *id.* §§ 1631–1644.

37. *Id.* § 1656(1).

38. *See Nolan Contracting, Inc. v. Regional Transit Authority,* 651 F.Supp. 23 (E.D.La.1986) (upholding RTA's affirmative action program), *aff'd per curiam on basis of opinion below,* 809 F.2d 1053 (5th Cir.1987); *Thompson v. Regional Transit Authority,* Civ. Action 86–4285(D) (E.D.La. Apr. 29, 1987) (available on WEST-LAW, 1987 WL 10203) (granting unopposed summary judgment motions dismissing unfair labor practice case against the RTA and plaintiff's employer).

39. *See Johnson v. Regional Transit Authority,* 508 So.2d 139 (La.App. 4th Cir.1987) (affirming trial court's dismissal of a personal injury case upon its finding that plaintiff was the sole negligent party); *Purolator Courier Corp. v. Regional Transit Authority,* 501 So.2d 793 (La.App. 4th Cir.1986) (reversing judgment for plaintiff in a property damage case, where plaintiff did not establish what bus, if any, hit its van); *Turner v. Regional Transit Authority,* 498 So.2d 777 (La. App. 4th Cir.1986) (affirming as modified a jury award against the RTA in a personal injury case); *see also Logue v. Regional Transit Authority,* 477 So.2d 718 (La.1985) (denying without written reasons an application for stay on a supervisory writ).

40. La.Rev.Stat.Ann. § 48:1654(B).

41. *Id.* § 1653(12).

sonal property, tangible or intangible property, or any interest therein ...." [42]

 Considering the overwhelming weight of the factors above, the Court cannot find the RTA to enjoy Eleventh Amendment immunity. Accordingly, the Court holds that it has federal subject matter jurisdiction over this matter; specifically, the Court has diversity jurisdiction over the RTA.[43]

### III.

For the foregoing reasons, the Court DENIED the RTA's motion to dismiss for lack of subject matter jurisdiction.[44]

---

**42.** *Id.* § 1656(3); *see also id.* § 1656(7).

**43.** *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131 (5th Cir.1983). The holding that the RTA is a "citizen" for diversity purposes under 28 U.S.C. § 1332 necessarily follows in this case from the holding that the RTA is not immune under the Eleventh Amendment. *See Jacintoport,* 762 F.2d at 437 & n. 2 ("the question of diversity jurisdiction in a suit against an 'agency' of the state frequently parallels this Eleventh Amendment inquiry"), 439 (calling the diversity inquiry "analogous" to the Eleventh Amendment inquiry).

**44.** The Court does not resolve the separate issue of whether plaintiff is entitled to a jury trial, as demanded. *See* La.Rev.Stat.Ann. § 13:5105

(West Supp.1988); *Turner,* 498 So.2d at 779. Nor does the Court resolve the issue of whether plaintiff has stated a cause of action under Louisiana law. *See* La.Rev.Stat.Ann. § 13:5106(A) (West Supp.1988); *Building Engineering Services Co. v. State of Louisiana,* 459 F.Supp. 180, 183 & n. 4 (E.D.La.1978); *cf. United States v. St. Bernard Parish,* 756 F.2d 1116, 1126 (5th Cir. 1985) (inquiry of eleventh amendment immunity is distinct from inquiry of whether Louisiana law allows such a suit), *cert. denied,* 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986). Both issues are not without difficulty and warrant future briefing.