Vickie L. VANCE, Plaintiff,

v.

BOYD MISSISSIPPI, INC. d/b/a Silver Star Casino, Defendant.

Civil Action No. 3:95–cv–728BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

April 16, 1996.

Jim D. Waide, III, Waide Law Office, Tupelo, MS, for plaintiff.

Richard C. Williams, Jr., Finisse Ewin Henson, III, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, MS, for Boyd Mississippi, Inc.

Douglas T. Miracle, Wise, Carter, Child & Caraway, Jackson, MS, James W. Clancy, Mississippi Band of Choctaw Indians, Philadelphia, MS, for Mississippi Band of Choctaw Indians.

*OPINION AND ORDER*

BARBOUR, Chief Judge.

This cause is before the Court on the following motions: (1) Motion to Dismiss Complaint filed by Boyd Mississippi, Inc. ("Boyd"), and (2) Motion of the Mississippi Band of Choctaw Indians ("the Tribe") for Leave to File Brief *Amicus Curiae.* Having considered the Motion to Dismiss, Plaintiff's Response, Defendant's Rebuttal and supporting and opposing memoranda, the Court finds that the Motion to Dismiss is not well taken and should be denied. Because the Court considered the brief submitted by the Tribe, the Court finds that the Motion for Leave to File Brief *Amicus Curiae* should be granted.

### I. *Factual Background* [1]

Vickie L. Vance, the Plaintiff, is an adult resident citizen of Neshoba County, Mississippi. Defendant Boyd manages the Silver Star Casino ("the Silver Star") which is owned by the Tribe and located on the Choctaw Tribal Reservation ("the Reservation"). Vance was employed by Boyd as an Emergency Medical Technician in the security office at the Silver Star.[2] According to Vance, she was involuntarily placed on maternity leave because of her pregnancy and without medical necessity. Vance was fully capable of performing her work duties when she was placed on leave by Boyd.

Vance filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she was a victim of discrimination in violation of the Pregnancy Discrimination Act of Title VII. Subsequently, Vance was fired from her job. Vance then alleged to the EEOC that she was fired in retaliation for filing an EEOC complaint. The EEOC dismissed Vance's complaint, erroneously according to Vance, based upon the "Indian Preference Exception" to Title VII.[3] Vance then received her right to sue letter from the EEOC and brought the present action.

The events about which Vance complains occurred at the Silver Star which is owned by the Tribe, located on the Reservation and managed by Boyd. The Choctaw Gaming Commission promulgates rules and regulations for the operation of the Silver Star. The parties agree that this is a dispute between non-Indian parties, Vance and Boyd, which arose on the Reservation. Boyd asserts, however, that because the actions giving rise to this cause of action occurred on the Reservation in a business owned by the Tribe, this Court should decline to exercise jurisdiction and allow this matter to be litigated in the Choctaw Tribal Court ("the Tribal Court"). According to Boyd and the Tribe, this Court should defer to the sovereignty of the Tribe because an adequate and appropriate judicial forum is available through the Tribal Court. Vance asserts, to the contrary, that the issues in this case arise under federal law and should properly be heard in federal court.

### II. *Standard for Motion to Dismiss*

For the purposes of a motion to dismiss under Rule 12(b)(6), all material allegations in Plaintiff's Complaint must be taken as true and construed in the light most favorable to Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A Rule 12(b)(6) dismissal is not appropriate unless it appears to a certainty that Plaintiff would not be entitled to relief under any set of facts that could be proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Rule 12(b)(6) requires dismissal "only if it appears that no relief could be granted under

---

1. Because the instant Motion is a Motion to Dismiss, the Court must consider that the factual allegations in the Plaintiff's Complaint are true.

2. Boyd alleges that Vance was employed as a security officer with Emergency Medical Technician duties. However, because this is a Motion to Dismiss, the Court is accepting Vance's job description rather than that of Boyd.

3. The statute defines "employer" as follows:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, *but such term does not include ... an Indian tribe ....* 42 U.S.C. § 2000e(b) (emphasis added).

any set of facts that could be proved consistent with the allegation." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

### III. *Analysis*

Boyd asserts that Vance should be required to exhaust her remedies in the Choctaw Tribal Court before bringing an action in federal court. According to Boyd, the tribal exhaustion rule is an "inflexible bar to consideration of the merits of the petition by the federal courts." Defendant's Brief in Support at 8 (quoting *Smith v. Moffett,* 947 F.2d 442, 444 (10th Cir.1991)). Boyd relies on the holdings of two United States Supreme Court cases to support its position. *See Iowa Mutual Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); *National Farmers Union Ins. Companies v. Crow Tribe of Indians,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Boyd also cites various Tenth Circuit and district court cases, which interpret *Iowa Mutual* and/or *National Farmers,* and all of which require exhaustion in the tribal courts of any dispute arising on an Indian reservation. *See, e.g., Texaco, Inc. v. Zah,* 5 F.3d 1374, 1376 (10th Cir.1993); *Smith,* 947 F.2d at 444; *Brown v. Washoe Housing Auth.,* 835 F.2d 1327 (10th Cir.1988); *Kaul v. Wahquahboshkuk,* 838 F.Supp. 515, 517 (D.Kan.1993); *Crawford v. Genuine Parts Co.,* 947 F.2d 1405 (9th Cir. 1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992). Boyd also relies on at least two Ninth Circuit cases which support this requirement of tribal exhaustion of any dispute arising on an Indian reservation. *See Wellman v. Chevron U.S.A., Inc.,* 815 F.2d 577 (9th Cir.1987); *R.J. Williams Co. v. Fort Belknap Housing Auth.,* 719 F.2d 979, 983 (9th Cir.1983), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

Vance interprets the tribal exhaustion doctrine as a "belief that a federal court should abstain from exercising jurisdiction over civil cases if those cases are also subject to tribal jurisdiction." Plaintiff's Brief in Opposition at 2 (citing *Iowa Mutual,* 480 U.S. at 15, 107 S.Ct. at 975; *National Farmers,* 471 U.S. at 857, 105 S.Ct. at 2454). According to Vance, the tribal exhaustion doctrine is not applicable in this case for three reasons: (1) the doctrine may not be applied to circumstances outside the narrow holdings of *Iowa Mutual* and *National Farmers;* (2) the tribal exhaustion rule is not an inflexible bar to the exercise of federal court jurisdiction; and (3) in considering the relevant factors concerning abstention, this Court should exercise federal jurisdiction in this case. Vance relies on *Altheimer & Gray v. Sioux Mfg. Corp.,* 983 F.2d 803, 814 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 621, 126 L.Ed.2d 585 (1993), and various district court cases and law review articles to support its contention that a bright line rule of tribal exhaustion was not contemplated by the Supreme Court in either *Iowa Mutual* or *National Farmers.* Vance also asserts that the leading case concerning federal court abstention, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), counsels in favor of exercising jurisdiction in this case.

The United States Court of Appeals for the Fifth Circuit has not yet ruled on the issue of tribal exhaustion of remedies in a case such as this. This Court must therefore look to existing Supreme Court precedent as well as the law of other circuits to determine the correct result in this case.

In *National Farmers,* an Indian child was struck by a motorcycle in the parking lot of an elementary school located on land owned by the State of Montana, but within the boundaries of the Crow Indian Reservation. 471 U.S. at 847, 105 S.Ct. at 2449. Through his guardian, the Indian child filed a lawsuit in the Crow Tribal Court against the school district which was a political subdivision of the State, not of the Crow Tribe. Process was served on the Chairman of the School Board, but he failed to notify anyone that a suit had been filed against the school board. *Id.* Thereafter, a default judgment was entered in the Tribal Court against the school district in the amount of $153,000.00. *Id.* at 848, 105 S.Ct. at 2449. Upon receiving a copy of the judgment, the school district filed

a complaint and motion for temporary restraining order in the District Court for the District of Montana. The complaint against the Crow Tribe and the Tribal Court, among others, stated that the execution of the default judgment would result in a seizure of school property which would cause irreparable injury to the school district. *Id.* Subsequently, the district court entered a permanent injunction finding that the Tribal Court lacked subject matter jurisdiction over the tort which was the basis for the default judgment. *Id.* at 848–49, 105 S.Ct. at 2449–50. The Ninth Circuit reversed concluding that federal jurisdiction could not be supported on any constitutional, statutory or common law ground. *Id.* at 849, 105 S.Ct. at 2450.

The Supreme Court held that "[t]he question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331." [4] *Id.* at 852, 105 S.Ct. at 2452. The Supreme Court then concluded, however, that the existence of the jurisdiction of a tribal court should first be determined by the tribal court itself:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which the sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
>
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.

*Id.* at 855–56, 105 S.Ct. at 2453–54. In a footnote, the Court stated that exhaustion would not be required under three circumstances: (1) where an assertion of tribal jurisdiction is made in bad faith or for the purpose of harassment; (2) where the action is "patently violative of express jurisdictional prohibitions;" or (3) where exhaustion would be futile because of no adequate opportunity to challenge the court's jurisdiction. *Id.* at 856 n. 21, 105 S.Ct. at 2454 n. 21. The Supreme Court then remanded the case for the district court to determine whether the action should be dismissed or merely held in abeyance until the plaintiffs had exhausted their tribal remedies. *Id.* at 857, 105 S.Ct. at 2454.

In the next major case addressing the issue of tribal exhaustion, the Supreme Court again held that tribal exhaustion of remedies was required. *Iowa Mutual,* 480 U.S. at 19–20, 107 S.Ct. at 978–979. The question in *Iowa Mutual* was whether a federal court could exercise diversity jurisdiction before the tribal court had an opportunity to determine its own jurisdiction. *Id.* at 11, 107 S.Ct. at 973. The plaintiff,[5] Edward LaPlante, was a member of the Blackfeet Indian Tribe and employed by the Wellman Ranch Company, which is located on the Blackfeet Indian Reservation. The Wellman Ranch Company is owned by members of the Wellman family who are also Blackfeet Indians. While driving a cattle truck on the Reservation, LaPlante lost control of the truck and was injured when it jack-knifed. LaPlante filed suit in the tribal court seeking compensatory damages against the owners of the Wellman Ranch and compensatory and punitive damages against Iowa Mutual and its claims adjuster for bad faith refusal to settle his claim. *Id.* Iowa Mutual sought dismissal for lack of subject matter jurisdiction and for LaPlante's failure to properly allege tribal court jurisdiction. *Id.* at 12, 107 S.Ct. at 974. The tribal court dismissed but allowed the plaintiff to amend his complaint to properly allege

---

**4.** 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**5.** LaPlante's wife was also a plaintiff in the action alleging a loss of consortium claim. For the sake of simplicity, the Court will only refer to LaPlante in the singular. *See id.* at 11–12, 107 S.Ct. at 973–974.

jurisdiction. The tribal court concluded that it would have jurisdiction over the action holding that "the Tribe could regulate the conduct of non-Indians engaged in commercial relations with Indians on the reservation." *Id.*

█ Iowa Mutual then filed suit in federal district court, based upon diversity of citizenship, naming LaPlante, the Wellmans and the Wellman Ranch Company as defendants. Iowa Mutual sought a declaration that it owed no duty to the Wellmans or the Ranch to defend or indemnify the suit brought by LaPlante in tribal court because the injuries sustained by LaPlante were not within the scope of the coverage provided by the applicable policies. *Id.* at 12–13, 107 S.Ct. at 974–975. On a motion to dismiss filed by LaPlante, the district court dismissed the case for lack of subject matter jurisdiction holding that the tribal court must first be given an opportunity to determine its own jurisdiction. *Id.* at 13, 107 S.Ct. at 974–975. The Ninth Circuit affirmed the district court concluding that "[w]e merely permit the tribal court to initially determine its own jurisdiction. The tribal court's determination can be reviewed later 'with the benefit of [tribal court] expertise in such matters.'" *Id.* at 14, 107 S.Ct. at 975.[6]

Relying on *National Farmers*, the Supreme Court held that although the federal district court had diversity jurisdiction, the plaintiff was required to exhaust his remedies in the tribal court before proceeding to federal court. *Id.* at 19, 107 S.Ct. at 978.

> Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a "full opportunity to determine its own jurisdiction." ... In diversity cases, as well as federal-question cases, unconditional access to the federal forum would place it in

direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs.... Adjudication of such matters by any nontribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law.

*Id.* at 16, 107 S.Ct. at 976 (citations omitted). In a footnote which has been largely ignored by the various courts of appeal, the Supreme Court made the following observation:

> As the Court's directions on remand in *National Farmers Union* indicate, the exhaustion rule enunciated in *National Farmers Union* did not deprive the federal courts of subject-matter jurisdiction. Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite. In this respect, the rule is analogous to principles of abstention articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976): even where there is concurrent jurisdiction in both the state and federal courts, deference to state proceedings renders it appropriate for the federal courts to decline jurisdiction in certain circumstances. In *Colorado River*, as here, strong federal policy concerns favored resolution in the nonfederal forum.

*Id.* at 16 n. 8, 107 S.Ct. at 976 n. 8. In concluding that Iowa Mutual had not yet exhausted all tribal remedies, the Court held:

> In this case, the Tribal Court has made an initial determination that it has jurisdiction over the insurance dispute, but Iowa Mutual has not yet obtained appellate review, as provided by the Tribal Code, ch 1, § 5. Until appellate review is complete, the Blackfeet Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene.

*Id.* at 17, 107 S.Ct. at 977.

█ Because this is a matter of first impression in this Circuit, the Court must de-

---

**6.** To the extent that this holding by the Ninth Circuit meant that the federal court could conduct a *de novo* review of the factual findings of tribal court proceedings, it was in error. The *Iowa Mutual* Court concluded that "[u]nless a federal court determines that the Tribal Court lacked jurisdiction, however, proper deference to the tribal court system precludes relitigation of issues raised by the LaPlantes' bad-faith claim

and resolved in the Tribal Courts." 480 U.S. at 19, 107 S.Ct. at 978. Thus, a federal district court can review *de novo* only the question of whether the tribal court had jurisdiction to hear the case. Of course, if the federal court concludes that jurisdiction was lacking, then none of the factual findings of the tribal court are binding on the federal district court.

cide how broadly to apply the holdings of *National Farmers* and *Iowa Mutual.* In making this determination, the Court is not convinced that the bright-line rule of requiring tribal exhaustion, as espoused by the Tenth Circuit, is the appropriate avenue for deciding cases with vastly different factual scenarios. Unlike the cases cited by Boyd and the Tribe, this case does not involve a dispute between Indians or even between an Indian and a non-Indian. The Plaintiff here is not challenging a tribal ordinance or its applicability to her situation. Nor is there any pending tribal court proceeding or an attack upon the jurisdiction of the Tribal Court. Rather, this is a case involving a dispute between two non-Indians, concerning only issues of federal law, which happened to arise on the Reservation in a business owned by the Tribe but which is managed by a non-Indian corporation. Furthermore, the factual situations in the two Supreme Court cases involve challenges brought in federal court to tribal court jurisdiction during ongoing tribal litigation. Some courts have interpreted the holdings in these two Supreme Court cases as not requiring tribal exhaustion in every case. *See Altheimer,* 983 F.2d at 814 (concluding that tribal exhaustion was not required because "there has been no attack on a tribal court's jurisdiction, there is no case pending in tribal court, and the dispute does not concern a tribal ordinance as much as it does state and federal law"); *Burlington Northern R.R. Co. v. Blackfeet Tribe,* 924 F.2d 899, 901 n. 2 (9th Cir.1991) (concluding that in this federal question case involving the challenge to the taxation by the tribe of a railroad right of way, "[t]he complaint presents issues of federal, not tribal law; no proceeding is pending in any tribal court; the tribal court possesses no special expertise; and exhaustion would not have assisted the district court in deciding federal law issues"), *cert. denied,* 505 U.S. 1212, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992); *Myrick v. Devils Lake Sioux Mfg. Corp.,* 718 F.Supp. 753, 754–55 (D.N.D.1989) (concluding that tribal exhaustion of plaintiff's Title VII claims was not required because there was no challenge to tribal court jurisdiction, the tribe was not a party and the case presented issues of predominately federal law). Given the facts in this case, the Court finds that tribal exhaustion of remedies is not required.

As noted by the Plaintiff, the decisions in *Iowa Mutual* and *National Farmers* were based upon the concern of treading on the jurisdiction of tribal courts (1) by not allowing the tribal courts to determine their jurisdiction in the first instance; (2) by avoiding competition between federal courts and tribal courts; and (3) based upon the belief that tribal courts are the best qualified to assess tribal law. Plaintiff's Brief in Opposition at 8 (citing *Iowa Mutual,* 480 U.S. at 15–16, 107 S.Ct. at 975–976; Lynn H. Slade, *Dispute Resolution in Indian Country: Harmonizing National Farmers Union, Iowa Mutual, and the Abstention Doctrine in the Federal Courts,* 71 N.D.L.Rev. 519, 523–24 (1995)). All of these factors weigh heavily in favor of this Court retaining jurisdiction over this action. There is no pending proceeding in the Tribal Court such that the jurisdiction of that court is being challenged. Because there is no pending proceeding, there will be no competition between this Court and the Tribal Court in this matter. Finally, as stated previously, the issues in this case do not involve any interpretation of tribal law. The issues presented are purely questions of federal law which should be decided in this Court.

Plaintiff also asserts that this Court should consider the factors set forth in *Colorado River* in deciding whether to stay or dismiss this proceeding. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The *Iowa Mutual* Court noted that the tribal exhaustion doctrine is a matter of comity, not of jurisdiction, which is analogous to the principles of abstention set forth in *Colorado River. Iowa Mutual,* 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8. Although these factors concern whether a stay is appropriate when a parallel state court proceeding is pending, the factors will be helpful in considering whether to stay or dismiss the instant case and require tribal exhaustion of remedies. The Court will therefore consider these factors in deciding whether to retain jurisdiction of this matter.

■ Under the *Colorado River* standard, this Court must find that "exceptional circumstances" warrant a stay or dismissal of this proceeding during the pendency of parallel litigation in another forum. *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 951 (5th Cir.1994). In *Colorado River*, the Supreme Court determined that, despite a "virtual unflagging obligation" to exercise federal jurisdiction, a district court could nonetheless abstain from the assumption of jurisdiction over a particular suit in "exceptional circumstances." 424 U.S. at 818–20, 96 S.Ct. at 1246–47. The Court announced four factors to consider when determining whether "exceptional circumstances" exist: (1) whether another court has assumed jurisdiction over the property; (2) whether the federal forum is inconvenient; (3) whether it is desirable to avoid piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. Later, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court added two additional factors to the *Colorado River* test: (1) whether the federal law provides the rule of decision; and (2) whether the proceedings in the concurrent forum are inadequate to protect the federal court plaintiff's rights. *Id.* at 25–26, 103 S.Ct. at 941–42. The Court will address each of these factors in turn.

■ In this matter, there is no *res* or property over which any court has assumed control. The presence of property over which a concurrent forum has taken control would tip the scales in favor of federal abstention. However, the absence of such property is not a neutral consideration but weighs in favor of the federal court retaining jurisdiction. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 589 n. 4 (5th Cir.1994); *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191–93 (5th Cir.1988). Therefore, this factor weighs in favor of this Court retaining jurisdiction.

■ As to the inconvenience of the federal forum, the *Jimco* court explained that this factor "primarily involves the physical proximity of the federal forum to the evidence and witnesses." *Jimco*, 844 F.2d at 1191. In making this assessment, the ultimate issue is not whether the Tribal Court is "better" or "more convenient" but whether the inconvenience of this Court is so substantial that it weighs in favor of abstention. *Id.* at 1192. In this matter, the federal forum, while not located on the Reservation, is close enough in proximity to the evidence and witnesses that this factor also weighs in favor of the federal court retaining jurisdiction over this matter.

■ The next factor is the desirability of avoiding piecemeal litigation. Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988). The policy behind avoiding piecemeal litigation is the justification of abstention based upon duplicitous state proceedings, namely "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817–19, 96 S.Ct. at 1246–47. The question, therefore, is whether either of the concurrent forums can resolve the entire dispute between all interested parties so that litigation in different courts will be unnecessary to conclude the conflict. *Jackson Hewitt, Inc. v. J2 Financial Services, Inc.*, 901 F.Supp. 1061, 1067 (E.D.Va.1995); *see also Snap–On Tools Corp. v. Mason*, 18 F.3d 1261, 1265 (5th Cir.1994) (indicating that the policy to avoid piecemeal litigation is implicit where claims will have to be litigated in separate suits). In this matter, if the Plaintiff was forced to first try her case in Tribal Court, she could still appeal to this Court the question of whether the Tribal Court had jurisdiction to entertain her case. *Iowa Mutual*, 480 U.S. at 19, 107 S.Ct. at 978. However, Plaintiff would not be able to appeal to this Court the factual issues raised and decided by the Tribal Court. *Id.*[7] As noted previously, *see supra* at n. 6, if this Court found that Tribal

---

**7.** This lack of the ability to appeal her entire case also weighs in favor of this Court retaining jurisdiction. *See infra* at 913.

Court jurisdiction was lacking, neither the factual nor legal findings of the Tribal Court would be binding on this Court in a subsequent proceeding. The Court finds that this factor also weighs in favor of federal court jurisdiction. It would be duplicitous to require the Plaintiff to go to Tribal Court, then return to this Court for a determination of whether the Tribal Court had jurisdiction. Although the Supreme Court has stated that a tribal court should be given the first opportunity to determine its own jurisdiction, *see Iowa Mutual,* 480 U.S. at 16–17, 107 S.Ct. at 976–977; *National Farmers,* 471 U.S. at 856, 105 S.Ct. at 2453, because this is a dispute between non-Indians over an issue strictly governed by federal law, this factor does not weigh in favor of abstention. *See supra* at 910–911.

 With regard to the order in which jurisdiction was obtained, federal district courts generally defer to the earlier-filed action. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728–29 (5th Cir.1985). With respect to the priority question, this factor "is to be applied in a pragmatic, flexible manner" such that it is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Signad, Inc. v. City of Sugar Land,* 753 F.2d 1338, 1340 (5th Cir.), *cert. denied,* 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985). In this matter, there is no pending Tribal Court action. Plaintiff filed her action in this forum, and there is no counter-claim by the Defendant or any other mechanism for the Defendant to file a suit in the Tribal Court to determine whether it is liable to the Plaintiff for her Title VII claims. Therefore, if the Court decides to stay this action, it would be usurping Plaintiff's choice

of forum and require the Plaintiff to litigate her case in a court not of her choosing. Because this case was filed first, and is the only pending case, this factor weighs heavily in favor of this Court retaining jurisdiction.[8]

The next factor is whether federal law provides the rule of decision. Here, Plaintiff's claims are strictly federal Title VII claims that she was dismissed because of her pregnancy and/or in retaliation for filing a charge with the EEOC. Such claims are best decided by federal courts who have an enormous amount of expertise in such matters.[9]

Finally, the Court must consider whether Plaintiff's rights would be adequately protected in the Tribal Court. Because of the relationship between the Defendant Boyd and the Tribe, the Court finds that there is a reasonable question of the appearance of the impartiality of the Tribal Court.[10] If allowed to remain in federal court, the parties will litigate before a federal tribunal with no connection to either of them. Furthermore, if the factual issues in this case are litigated in the Tribal Court, the Plaintiff may not challenge those issues in a later suit in this Court. *See supra* n. 7. For this reason, this factor weighs in favor of this Court retaining jurisdiction.

Based on a careful application of the *Colorado River/Moses H. Cone* factors, the Court finds that the circumstances in this case do not rise to the level of "exceptional" such that they substantially outweigh the presumption in favor of the exercise of jurisdiction. The Court therefore finds that this Court should retain jurisdiction of this cause of action, and that Plaintiff should not be

---

**8.** The Court notes that in both *Iowa Mutual* and *National Farmers,* the tribal courts were the first to obtain jurisdiction over the parties and proceedings were pending in those courts when the federal court cases were filed. *Iowa Mutual,* 480 U.S. at 11–13, 107 S.Ct. at 973–974; *National Farmers,* 471 U.S. at 847–48, 105 S.Ct. at 2449–50.

**9.** This Court has much more expertise in Title VII cases than does the Tribal Court. *See also Yellow Freight Sys., Inc. v. Donnelly,* 494 U.S. 820, 826, 110 S.Ct. 1566, 1570, 108 L.Ed.2d 834

(1990) (concluding that in deciding where to file suit, plaintiffs may consider the factor that federal judges are more experienced in handling Title VII cases).

**10.** This standard is applicable to federal court judges in considering whether to recuse themselves from a case and is set forth in 28 U.S.C. § 455: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**914**

required to exhaust tribal court remedies in this matter.

### IV. *Conclusion*

The Court finds that *Iowa Mutual* and *National Farmers* should not be read so broadly so as to required tribal exhaustion of remedies in every case where an Indian tribe has any remote interest in the action. In this matter, the only connection of the Tribe with this matter is that it owns the Silver Star Casino where the events took place giving rise to this cause of action, and that the events occurred on the Reservation. However, because this is an action for Title VII discrimination between non-Indians involving only issues of federal law, the Court finds that tribal exhaustion of remedies should not be required in this case.

IT IS THEREFORE ORDERED that the Motion to Dismiss Complaint filed by Boyd Mississippi, Inc. should be and hereby is denied.

IT IS FURTHER ORDERED that the Motion of the Mississippi Band of Choctaw Indians for Leave to File Brief *Amicus Curiae* should be and hereby is granted.

SO ORDERED.