**SUNLAND PUBLISHING COMPANY, INC. Plaintiff**

v.

**THE CITY OF JACKSON, et al. Defendants**

**No. CIV.A. 3:98–CV–385WS.**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 27, 1999.

John J. Fraiser, III, John J. Fraiser, III, Jackson, MS, Mark David Morrison, Hickman, Goza & Gore, PLLC, Ridgeland, MS, for Plaintiff.

Michael Jeffrey Wolf, City Attorney's Office, Hugh W. Tedder, Jr., Patricia K. Monson, Office of the City Attorney, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the individual defendants, Louis Armstrong, Kenneth Stokes, Credell Calhoun, Marcia Weaver and Margaret Barrett[1] (all councilpersons for the City of Jackson, Mississippi, and referred to collectively as "council-persons"), to dismiss the plaintiff's claims under Title 42 U.S.C. § 1983.[2] The motion is founded on Rule 12(b)(6)[3] of the Federal Rules of Civil Procedure and argues that plaintiff's complaint fails to state a cause of action upon which relief can be granted under § 1983.

In this lawsuit, the plaintiff, Sunland Publishing Company, Inc., d/b/a The Northside Sun (hereinafter "The Sun"), sues defendants, City of Jackson, Mississippi, and the above-named councilpersons, individually and in their official capacity, claiming, *inter alia*, violations under § 1983 for the defendants' role in denying the plaintiff a 1995 publications contract with the City of Jackson. For the reasons which follow, this court denies defendants' motion to dismiss plaintiff's § 1983 claims against the individual councilpersons.

## FACTUAL BACKGROUND

Plaintiff's lawsuit alleges that the City of Jackson and the individual councilpersons sitting on the Jackson City Council (hereinafter "the Council")[4] in October of 1994, violated the constitutional rights of the plaintiff, when the Council failed to award a contract for the publication of the City's legal notices to The Sun. The City, which is required by law to advertise for services and to place certain notices in newspapers, solicits bids to area newspapers each year for the award of this contract. In response to an "Advertisement For Bids," which solicited bids in late 1994 from local newspapers "for the publication of the City's proceedings, ordinances, resolutions and other notices to be published," The Sun, along with two other local newspapers (The Jackson Advocate and The Clarion Ledger), submitted a bid for the contract. The "Advertisement For Bids" provided in pertinent part:

The successful bidder will be awarded a contract from December 1, 1994 through November 30, 1995, for publica-

---

1. Since plaintiff voluntarily dismissed Margaret Barrett as an individual defendant on January 22, 1999, Ms. Barrett's participation in the motion is irrelevant.

2. Title 42 U.S.C. § 1983 provides in pertinent part as follows:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Rule 12(b) provides in pertinent part:

   Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

4. The Jackson City Council is the legislative branch of government for the City of Jackson.

tion of the City's proceedings, ordinances, resolutions, and other notices required to be published.

Bids should be submitted based on a per word rate for a first, second and third publication. Bidders should also include a flat rate for supplying a proof of publication. . . .

Determination of the low bidder will be based on the cost for a one hundred word advertisement published three times and a single proof of publication.

The Council, after receiving the bids in late 1994 for the 1995 contract, chose to award the contract to The Jackson Advocate, even though it was not the lowest per-line bidder. Subsequently, The Sun, the lowest bidder, filed this lawsuit.

Count One of plaintiff's Amended Complaint claims that plaintiff was damaged when "[t]he City, Council, and all members voting in favor of this arbitrary act . . . acted willfully, arbitrarily, capriciously, and in bad faith by violating [Miss.Code Ann. §§ 13–3–31 [5] and 21–39–3 [6]] . . . and

---

**5.** Miss.Code Ann. § 13–3–31 (Supp.1994) provides in part:

(1) Whenever it is required by law that any summons, order, citation, advertisement or other legal notice shall be published in a newspaper in this state, it shall mean, in addition to any other requirements imposed by law, publication in some newspaper which:

(a) Maintains a general circulation predominantly to bona fide paying subscribers within the political subdivision within which publication of such legal notice is required. The term "general circulation" means numerically substantial, geographically widespread, demographically diversified circulation to bona fide paying subscribers. In no event shall the term "general circulation" be interpreted to require that legal notices be published in a newspaper having the greatest circulation. The term "bona fide paying subscribers" means persons who have subscribed at a subscription rate which is not nominal, whether by mail subscriptions, purchases through dealers and carriers, street vendors and counter sellers, or any combination thereof, but shall not include free circulation, sales at a token or nominal subscription price and sales in bulk for purposes other than for resale for individual subscribers.

(2) "Newspaper," as used in this section, shall not include a newspaper, publication, or periodical which is published, sponsored by, is directly supported financially by, or is published to further the interests of, or is directed to, or has a circulation restricted in whole or in part to any particular sect, denomination, labor or fraternal organiza-

tion or other special group or class of citizens, or which primarily contains information of a specialized nature rather than information of varied, broad and general interest to the general public, or which is directed to any particular geographical portion of any given political subdivision within which publication of such legal notice is required, rather than to such political subdivision as a whole. No newspaper otherwise qualified under this section shall be disqualified from publishing legal notices for the sole reason that such newspaper does not have as great a circulation as some other newspaper publishing in the same political subdivision.

(3) In the event of the discontinuance of the publication of all newspapers in any county qualified under this section to publish legal notices, any other such newspaper published in the same county, regardless of the length of time it has been published, shall be deemed qualified to publish such legal notices, provided such newspaper meets all requirements of this section other than the requirements of subsection (1)(d) of this section.

(4) A newspaper otherwise qualified under this section which is published in a municipality whose corporate limits encompass territory in more than one (1) county shall be qualified to publish legal notices for any county a portion of whose territory is included within the municipality, irrespective of the actual physical location within the municipality of the notices, provided such newspaper meets all requirements of this section other than the requirements of subsection (1)(d) of this section.

(4) A newspaper otherwise qualified under this section which is published in a munici-

not awarding the contract to the lowest qualified bidder, the Sun."

In Count Two, plaintiff, in its capacity as a taxpayer and private attorney general, seeks to have the defendants pay compensatory and punitive damages to the City Treasury for the same alleged conduct of the Council.

Count Three of plaintiff's Amended Complaint claims damages as a result of the defendants' "bad faith representations and the Sun's reliance thereon."

Counts Four and Five claim violations under Title 42 U.S.C. §§ 1983[7] and 1988[8] as well as due process violations as "guaranteed by the U.S. Constitution, the Mississippi Constitution and the laws of Mississippi." Plaintiff claims that the defendants' "arbitrary, capricious, bad faith, and race-related unequal application of

the bid law" has caused the plaintiff damages.

As stated previously, defendants' motion asks this court to dismiss plaintiff's § 1983 claims.

### RULE 12(b)(6) STANDARD

To prevail on a Rule 12(b)(6) motion, a movant must show that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Unlike a summary judgment motion, the court's inquiry essentially is limited to the contents of the complaint and pleadings. *Clark v. Tarrant County, Texas*, 798 F.2d 736, 745 (5th Cir.1986). All of the allegations in the plaintiff's complaint must be taken as true and construed in the light

---

pality whose corporate limits encompass territory in more than one (1) county shall be qualified to publish legal notices for any county a portion of whose territory is included within the municipality, irrespective of the actual physical location within the municipality of the principal public business office of the newspaper.

**6.** Miss.Code Ann. § 21–39–3 (1972) provides:

In municipalities in which there is more than one newspaper qualified to publish legal notices, the governing authorities of such municipality shall enter into a contract for the publication of its proceedings, ordinances, resolutions, and other notices required to be published only after inviting competitive bids from such newspapers. Such contracts shall be let to the lowest bidder among them for a period of not more than twelve months from the date of such contract. It shall not be necessary, however, that the governing authorities of such municipality advertise its intention to accept such competitive bids but it shall be sufficient if notice thereof in writing be given to all of such newspapers by mail or delivery at least five days prior to the date on which said bids will be received, which

said notice shall specify the date on which such bids will be received.

**7.** See footnote 2.

**8.** Title 42 U.S.C. § 1988(a) provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

most favorable to the plaintiff. *Vance v. Boyd Mississippi, Inc. d/b/a Silver Star Casino,* 923 F.Supp. 905, 907 (S.D.Miss. 1996), citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). Furthermore, the court is obliged to draw all reasonable inferences in favor of the plaintiff before granting a motion to dismiss for failure to state a claim. *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

### LAW AND ANALYSIS

The issue now before the court is whether the councilpersons involved in the decision to award the publishing contract to The Jackson Advocate (rather than to The Sun) should enjoy absolute immunity from liability under § 1983.[9] It is now well established that local legislators, like federal, state, and regional legislators, are entitled to absolute immunity from § 1983 liability for their legislative activities. *Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 970–72, 140 L.Ed.2d 79 (1998); *Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 134 (5th Cir.1986). Thus, actions taken by legislators "in the sphere of legitimate legislative activity" cannot subject those legislators to liability. *Bogan,* 118 S.Ct. at 972, citing *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). The rationale behind this rule is clear: the threat of liability for decisions made by legislators performing their legislative functions could significantly stifle the legislative process. *See Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990)("[A]ny restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"). Reiterating this principle in the context of local legislative action, the *Bogan* Court stated:

> Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability.... And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability...

> Moreover, certain deterrents to legislative abuse may be greater at the local level than at other levels of government. Municipalities themselves can be held liable for constitutional violations, whereas States and the Federal Government are often protected by sovereign immunity.

*Bogan,* 118 S.Ct. at 971–72 (citations omitted). The Court further made clear that the intent of the defendant legislator at the time he or she performs the allegedly unconstitutional act, has no bearing on whether the act should be considered legislative. *Id.* at 972–73. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 973. Therefore, district courts, in determining whether the act in question is indeed legislative, should not inquire into the motives of the legislators but instead should determine whether under the state statutory scheme

---

9. To recover under Title 42 U.S.C. § 1983, a plaintiff must prove two vital elements: (1), that he has been deprived of a right secured by the Constitution and the laws of the United States; and (2), that the persons depriving him of this right acted under color of any statute, etc., of a State, Territory or the District of Columbia. *See West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Daniel v. Ferguson,* 839 F.2d 1124, 1128 (5th Cir.1988).

the act "involve[s] the degree of discretion and public-policymaking traditionally associated with legislative functions or merely an administrative application of existing policies." *Minton,* 803 F.2d at 135; *see also Bogan,* 118 S.Ct. at 973 (holding that legislator's actions "were legislative because they were integral steps in the legislative process"). In addition to the requirement that actions be "legislative" in nature, the legislative actions must be done " 'in relation to the business before' " the legislative body. *Powell v. McCormack,* 395 U.S. 486, 502, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), quoting *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377 (1880).

In the case *sub judice,* the selection of the Jackson Advocate as the newspaper to be awarded the City's publication contract was undoubtably related to the business before the legislative body. The only question is whether that act should be deemed legislative—thereby protecting the individual councilpersons with a shield of absolute immunity—or whether the act should be deemed administrative—thereby leaving the councilpersons exposed to individual liability.

This court is persuaded that the decisions of the councilpersons lacked the necessary "degree of discretion" to be considered legislative and, therefore, must be deemed administrative. While the act of voting for the award of a publishing contract is, perhaps, legislative in form,[10] this court is persuaded that it is administrative in substance. Sections 21–39–3 [11] and 13–3–31 [12] of Mississippi Code Annotated (the Mississippi statutes which detail the re-

quirements and procedures necessary for publication) and the "Advertisement For Bids" leave little, if any, discretion to councilpersons in deciding which newspaper to award the contract. The "Advertisement For Bids" provides that "[t]he successful bidder *will be awarded* " the contract. (Emphasis added). Section 21–39–3 of Mississippi Code Annotated likewise provides that "[s]uch contracts *shall be let* to the lowest bidder among them." (Again, emphasis added). Therefore, the process of voting to determine the "winner" of the contract after all bids had been received was merely a formality or an administrative function of the councilpersons.

Although the defendants argue that the voting was an integral step in the legislative process and "within the sphere" of legitimate legislative activity, this court is persuaded that under Fifth Circuit jurisprudence the act must be deemed administrative. In *Hughes v. Tarrant County Texas,* 948 F.2d 918, 920–21 (5th Cir.1991), the Fifth Circuit in an attempt "to develop a clear standard by which to distinguish between legislative acts entitled to absolute immunity and non-legislative acts entitled only to qualified immunity," quoted and adopted as Fifth Circuit law the following language:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific,

---

**10.** The *Bogan* Court declined to address *whether form alone is sufficient to characterize an act "legislative" for absolute immunity purposes.* *Bogan,* 118 S.Ct. at 973 ("We need not determine whether the formally legislative character of petitioners actions is alone sufficient to entitle petitioners to legislative immu-

nity, because here the ordinance, in substance, bore all the hallmarks of traditional legislation").

**11.** See footnote 6.

**12.** See footnote 5.

such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Id.,* quoting *Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984).

The *Hughes* Court held that county commissioners' refusal to compensate a state district court clerk for attorney fees incurred as a result of contempt proceedings was not legislative. *Id.* at 921. The Fifth Circuit stated:

> Even though the decision concerned the allocation of county monies, it was not based on legislative facts; it was not based on general facts regarding any policy, but instead, it was based on specific facts of an individual situation related to the district court clerk. Furthermore, the action did not purport to establish a general policy; it was particular to Hughes. Because we find that the challenged conduct was not legislative, we hold that the commissioners are not entitled to absolute legislative immunity.

*Id.* Numerous other courts have held similar acts of legislators to be administrative and not under the blanket of protection provided by the absolute immunity doctrine. *See e.g., Kamplain v. Curry County Bd. of Commissioners,* 159 F.3d 1248, 1252 (10th Cir.1998) (holding that board's vote to ban plaintiff from future meetings and subsequent decision to prohibit plaintiff from speaking before board were administrative acts because decisions were not related to legislation or legislative function but were efforts to monitor and discipline plaintiff's conduct); *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118, 1135–36 (W.D.Pa.1980) (holding that adoption by council of resolution authorizing the award of contract to bidder was administrative act because it involved no discretion or policy making); *Lacorte v. Hudacs,* 884 F.Supp. 64, 71 (N.D.N.Y.1995) ("While the initial decisions to undertake the airport project and to adopt certain contract specifications may properly be characterized as flowing from legislative decision-making and actions, adoption of the resolution denying the contract to these alleged low-bidders is more properly characterized as an administrative act").

This court holds that the acts of the councilpersons were administrative.[13] The decisions, according to Miss.Code Ann. §§ 13–3–31 and 21–39–3 as well as the "Advertisement For Bids," were to be based on specific facts—the per-line quotes of three newspapers. Further, the Council's action did not impact a broad group or establish general policy. Therefore, the councilpersons are not entitled to absolute legislative immunity from individual liability under § 1983. Accordingly, the defendants' motion to dismiss plaintiff's § 1983

---

**13.** One should not construe this holding as necessarily dispositive of the instant litigation, since defendants, even where the court has held their actions "administrative," in appropriate circumstances may rely upon the "good faith" defense. *Minton, supra,* 803 F.2d at 135 ("When an official possessing legislative responsibilities engages in official activities insufficiently connected with the legislative process to raise genuine concern that an inquiry into the motives underlying his actions will thwart his ability to perform his legislative duties, vigorously, openly and forthrightly, he is not entitled to absolute immunity but only to the qualified immunity grounded in good faith that is bestowed upon other government officials"); *see also Hughes, supra,* quoting *Minton,* 803 F.2d at 135.

claims against the individual defendants is hereby denied.