Janice **TIDWELL** Plaintiff,

v.

**HARRAH'S KANSAS CASINO CORPORATION d/b/a Harrah's Prairie Band Casino Defendant**

**No. 03–4016–JAR.**

United States District Court, D. Kansas.

June 4, 2004.

Pantaleon Florez, Jr., Topeka, KS, for Plaintiff.

Matthew R. O'Connor, Polsinelli Shalton & Welte, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS

ROBINSON, District Judge.

This matter comes before the Court on defendant Harrah's Kansas Casino Corp.'s (Harrah's) Motion to Dismiss (Doc. 13) plaintiff Janice Tidwell's Complaint alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII) and the Kansas Act Against Discrimination. Harrah's argues dismissal is warranted pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, Harrah's motion to dismiss is denied.

### A. Background

Plaintiff Janice Tidwell filed a complaint against her employer, Harrah's, alleging violations of Title VII and the Kansas Act Against Discrimination. In her complaint, plaintiff alleges that she was subjected to unwanted sexual harassment at Harrah's while in the presence of management. Harrah's is a non-Indian entity that is located entirely on the Potawatomi reservation. Plaintiff, who is not a tribal member, is a United States citizen residing in Hoyt, Kansas, which is outside of the Potawatomi reservation. Harrah's operates the casino pursuant to an Operating Agreement it entered into with the Potawatomi Indian Nation, and the operation of the casino is conducted under the terms of the Indian Gaming Regulatory and the Prairie Band Potawatomi Nation—Kansas Gaming Compact (Compact).

The Potawatomi nation has adopted the "Potawatomi Law and Order Code that grants it jurisdiction and governmental authority over 'all lands ... within the boundaries on the Reservation' as well as 'all persons and property' within the Reservation. The Code also gives the Potawatomi tribal courts jurisdiction "over all ... general civil claims which arise within the tribal jurisdiction."

### B. Discussion

Harrah's has filed the instant motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. Specifically, Harrah's alleges that because the events giving rise to plaintiff's claim arose entirely on reservation land, the tribal exhaustion doctrine dictates that the case first be brought in tribal court before it can be brought in federal court. Harrah's also argues that the Compact requires that this case be adjudicated in the tribal courts. In response, plaintiff claims that the tribal exhaustion doctrine does not apply and that the Compact does not extend tribal jurisdiction to Title VII claims.

 Federal courts are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to exercise jurisdiction.[1] A court lacking jurisdiction must dismiss the case regardless of the stage of the proceeding when it becomes apparent that jurisdiction is lacking.[2] There is a presumption against federal jurisdiction,[3] and the party who seeks

1. Montoya v. Chao, 296 F.3d 952, 955 (10th Cir.2002); see United States v. Hardage, 58 F.3d 569, 574 (10th Cir.1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

2. Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir.1995).

3. Marcus v. Kansas Dept. of Revenue, 170 F.3d 1305, 1309 (10th Cir.1999).

to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[4] Mere conclusory allegations of jurisdiction are not enough.[5] Instead, a plaintiff must present facts to show jurisdiction and support those facts with competent evidence.

## 1. Tribal Exhaustion Doctrine

■ Harrah's claims that the doctrine of tribal exhaustion requires the Court to dismiss plaintiff's claims for lack of subject matter jurisdiction. The Court first notes that tribal exhaustion is required as a matter of comity, *not as a jurisdictional prerequisite.*[6] It is undisputed that this Court has federal question jurisdiction to adjudicate this case, which arises under Title VII.[7] Therefore, if there is any basis for dismissal, it is due to comity, not jurisdiction.

■ *National Farmers Union Ins. Companies v. Crow Tribe of Indians*[8] is the seminal case on the tribal exhaustion doctrine. In *National Farmers,* the Supreme Court announced that "Congress is committed to a policy of supporting tribal self-government and self-determination."[9] To further that policy, the Court held that the question of whether tribal courts have jurisdiction over a matter involving non-Indians in civil cases should first be addressed in tribal courts.[10] In *Iowa Mutual Insurance Co. v. LaPlante,* the Su-

preme Court further explained that "[t]ribal sovereignty over the activities of non-Indians on reservation lands is an important part of tribal sovereignty." Thus, civil jurisdiction over actions on reservation lands lies in the tribal courts unless affirmatively limited by a specific treaty or provision or federal statute.[11]

■ Four exceptions exist to the tribal exhaustion doctrine. *National Farmers* teaches that the doctrine does not apply: 1) where the assertion of tribal court jurisdiction is motivated by harassment or conducted in bad faith; 2) when the tribal court action violates express jurisdictional prohibitions; and 3) where tribal court exhaustion would be futile because of an inadequate opportunity to challenge the tribal court's jurisdiction.[12] In *Strate v. A–1 Contractors,* the Court announced another exception: when it is plain that no federal grant provides for the governance of non-Indian members' conduct, a court should not apply the tribal exhaustion doctrine because it would serve no purpose other than delay.[13]

Plaintiff argues that the doctrine does not apply because no Indian sovereignty concerns are implicated by her suit, the assertion of tribal court jurisdiction is motivated by bad faith, and tribal court action would violate express and implied jurisdic-

**4.** *Montoya,* 296 F.3d at 955.

**5.** *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3d 1156, 1160 (10th Cir.1999).

**6.** *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 20 n. 14, 107 S.Ct. 971, 94 L.Ed.2d 10; *Strate v. A–1 Contractors,* 520 U.S. 438, 451, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

**7.** 42 U.S.C.2000e–5(f)(3).

**8.** 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985).

**9.** 471 U.S. at 856, 105 S.Ct. 2447, 85 L.Ed.2d 818.

**10.** *Id.*

**11.** *Strate,* 520 U.S. at 451, 117 S.Ct. 1404, 137 L.Ed.2d 661.

**12.** 471 U.S. at 856 n. 21, 105 S.Ct. 2447, 85 L.Ed.2d 818.

**13.** *Strate,* 520 U.S. at 459 n. 14, 117 S.Ct. 1404, 137 L.Ed.2d 661.

tional prohibitions. The Court addresses each of plaintiff's assertions in turn.

■ Harrah's urges that tribal sovereignty concerns are implicated because this case arose on the reservation, relying on *National Farmers* and *Iowa Mutual.* However, *National Farmers* and *Iowa Mutual* present a different factual picture from the instant case. In both cases there was a pending tribal suit, and in *Iowa Mutual* tribal jurisdiction was at issue.[14] Additionally, both *National Farmers* and *Iowa Mutual* involved a dispute between an Indian and a non-Indian.[15] The Court finds it difficult to discern what sovereignty concerns are threatened by plaintiff's suit. Her suit is between two non-Indian entities and plainly involves issues of federal law. The only connection with the tribe is the casino's location on the reservation. Nevertheless, Harrah's suggests that adjudication of plaintiff's suit jeopardizes tribal sovereignty.

The Court notes that its independent research disclosed only two cases involving the tribal exhaustion doctrine and Title VII claims. In *Myrick v. Devils Lake Sioux Manufacturing Corp.,*[16] the court declined to apply the tribal exhaustion doctrine to a Title VII age discrimination case brought by a tribal member. The court held concerns of tribal self government were not implicated because there was no challenge to the jurisdiction of the tribal court, the tribe was not a party, and the case presented issues of federal law.[17]

The instant case presents an even stronger case against the doctrine because plaintiff is a non-tribal member.

Similarly, in *Vance v. Boyd Mississippi, Inc.,*[18] a non-tribal employee sued its non-tribal company employer for Title VII violations. The *Vance* court found exhaustion was not required because the case involved a dispute between two non-Indians concerning issues of federal law, the employee was not challenging a tribal ordinance or its applicability to her situation, and there was no pending tribal court proceeding or attack on the jurisdiction of the tribal court.[19] In light of *Myrick, Vance* and the lack of connection to tribal self government the instant case presents, this Court finds Harrah's argument that plaintiff's case threatens tribal sovereignty tenuous at best.

■ Plaintiff also argues that the tribal exhaustion doctrine does not apply because the assertion of tribal court jurisdiction is motivated by bad faith. The basis of plaintiff's bad faith argument is the tribe's specific exemption from Title VII and lack of "established internal process for adjudicating plaintiff's claims." The tribe's exemption from Title VII cannot form a bad faith claim because the tribe is not a party to this lawsuit. Moreover, the tribe has a code of civil procedure that is substantially similar to the Federal Rules of Civil Procedure. Thus, plaintiff's bad faith argument fails.

---

**14.** 471 U.S. at 848, 105 S.Ct. 2447; 480 U.S. at 12, 107 S.Ct. 971. The Court is well aware of the Tenth Circuit's admonition that "the exhaustion rule does not require an action to be pending in tribal court." *United States v. Tsosie,* 92 F.3d 1037, 1041 (10th Cir.1996). Nevertheless, the Court considers the lack of a pending action, among other factors, in its analysis.

**15.** 471 U.S. at 847, 105 S.Ct. 2447; 480 U.S. at 11, 107 S.Ct. 971. *Hartman v. Kickapoo Tribe Gaming Commission,* 176 F.Supp.2d

1168, (D.Kan.2001), and *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498 (19th Cir.1997), also cited by Harrah's include at least one tribal party.

**16.** 718 F.Supp. 753, 755 (D.N.D.1989).

**17.** *Id.*

**18.** 923 F.Supp. 905, 911 (S.D.Miss.1996).

**19.** *Id.*

Lastly, plaintiff argues that tribal court action would violate express and implied jurisdictional prohibitions. Confusingly, plaintiff states that because the Indian tribe would not require her to file an administrative charge of sex discrimination or harassment before receiving her right to sue, a tribal court action would violate jurisdiction prohibitions. Plaintiff does not explain the relationship between a right to sue letter and tribal court jurisdiction. The Court finds plaintiff's poorly articulated argument to be without merit.

■ Although not discussed by either party, the Court is particularly troubled by the fourth exception to the tribal exhaustion doctrine. In *Strate*, the Supreme Court made clear that when it is plain that no federal grant provides for tribal governance of non-tribal members' conduct on land that has been alienated to nonmembers, a court should not apply the tribal exhaustion doctrine.[20] Application of the doctrine in such cases would only result in delay because absent the contrary intervention of a treaty or federal law, a tribe has no civil authority over non-tribal members for activities on reservation land alienated to non-members, subject to two exceptions.[21] First, the tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealing, contracts, or other arrangements.[22] Second, a tribe retains inherent power to exercise civil authority over the conduct of nonmembers on non-Indian

land within its reservation when that conduct threatens or has some direct effect on the political integrity, economic security or the health and welfare of the tribe.[23]

The record does not reveal whether Harrah's is located on non-Indian land. Rather, the record reveals only that Harrah's operates the casino pursuant to an Operating Agreement it entered into with the Potawatom Indian Nation, and the operation of the casino is conducted under the terms of the Indian Gaming Regulatory and the Compact. It is thus uncertain whether the tribe even has civil authority over the parties to this action. And, if the tribe lacks civil authority, tribal exhaustion is not required.

■ Even if the tribal exhaustion doctrine applies, dismissal is not warranted because comity does not require exhaustion of tribal remedies. The tribal exhaustion requirement is based on comity concerns for tribes in maintaining their remaining sovereignty.[24] Three specific interests are advanced by proper application of the rule: 1) furthering [the] congressional policy of supporting tribal self-government; 2) promoting the orderly administration of justice by allowing a full record to be developed in tribal court; and 3) obtaining the benefit of tribal expertise if further review becomes necessary.[25]

When the activity at issue arises on the reservation or involves a "reservation affair," comity concerns "almost always dictate that the parties exhaust their tribal remedies before resorting to the federal forum." [26] On the other hand, "when the

20. *Strate v. A–1 Contractors*, 520 U.S. at 459 n. 14, 117 S.Ct. 1404, 137 L.Ed.2d 661.

21. *Montana v. United States*, 450 U.S. 544, 563–65, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981); *Strate*, 520 U.S. at 446, 117 S.Ct. 1404.

22. *Montana*, 450 U.S. at 565, 101 S.Ct. 1245.

23. *Id.* at 566, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493.

24. *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir.1997).

25. *National Farmers*, 471 U.S. at 856–57, 105 S.Ct. 2447, 85 L.Ed.2d 818.

26. *Kerr–McGee Corp*, 115 F.3d at 1507.

dispute involves non-Indian activity occurring outside the reservation," the policies behind the tribal exhaustion rule are not so obviously served, and the court must undertake an individualized approach to determine whether comity requires a party to first exhaust her tribal remedies.[27]

This case does not present a classic "reservation affair," it is a dispute between two non-tribal members arising under federal law, which took place in a casino owned by a nonmember. The mere fact that the casino is located on the reservation does not convert this dispute into "reservation affair." Thus, the court must assiduously examine the *National Farmers* factors to determine whether comity requires the parties to exhaust their remedies.

In this case, the first factor does not support application of the doctrine. Plaintiff's case does not touch upon tribal self government; it does not involve injury to tribal members, a challenge to a tribal policy, the regulation of reservation lands, or even implicate tribe law. Nor does the second factor weigh heavily in favor of the tribe because this case does not present the sort of "procedural nightmare" contemplated by *National Farmers*. Finally, the third comity concern, obtaining the benefit of tribal court expertise, does not favor exhaustion. If plaintiff's case involved questions of tribal law, the benefit of tribal court expertise would be unquestionable. But, it is the federal courts that are experts of Title VII cases, not the tribal courts. Indeed, as plaintiff states, the tribe is specifically exempted from Title VII. Thus, the Court concludes that even if the tribal exhaustion doctrine applies, comity does not require dismissal of this suit.

**2. The Prairie Band Potawatomi Nation—Kansas Gaming Compact**

Harrah's claims that Compact requires this case to be adjudicated in state court. Pursuant to section 14 of the Compact, the tribal court has jurisdiction over "all transactions or activities which relate" to Class II gaming on the Reservation. Because plaintiff's claim of sexual harassment stems from her employment as a Table Games Supervisor at the casino, Harrah's asserts that the Tribe has jurisdiction. However, Harrah's has neglected to attach the Compact to its motion to dismiss, so the Court is unable to address this issue.

**IT IS THEREFORE ORDERED BY THE COURT** that Harrah's Motion to Dismiss (Doc. 13) plaintiff's Complaint shall be DENIED.

**IT IS SO ORDERED.**